A00A2123. CIBA VISION CORPORATION v. JACKSON.
(548 SE2d 431)

POPE, Presiding Judge.

CIBA Vision Corporation, a Delaware corporation, manufactures contact lenses in Georgia and also warehouses in Georgia ophthalmic drugs that were purchased out of state. As a part of its marketing strategy, CIBA gives away free samples of these items to licensed dis-

pensers throughout the world. CIBA paid Georgia sales and use tax on these transactions from 1992 to 1996 (the "Refund Period") totaling $2,558,234. In 1998, CIBA requested a refund contending that distribution of free samples is exempt from the tax. The trial court granted summary judgment in favor of the State, holding that as a matter of law, the transactions were taxable. CIBA appeals and argues that the case law relied upon by the trial court should be disapproved or overruled.[1]

During the Refund Period, CIBA manufactured and packaged contact lenses in Gwinnett County and stored them in a facility in Fulton County. Sample lenses were labeled "not for resale," were stored separately, and were given to eye-care professionals located in Georgia and elsewhere. In most cases, CIBA simply mailed them to requesting eye-care professionals who, in turn, would use them to demonstrate the product for the patient, to test their fit on the patients, and to test the patients' tolerance for the lenses. But in some cases, CIBA gave the sample lenses to sales representatives who in turn gave them to eye-care professionals. The sales representatives would sometimes open the packages during sales calls to demonstrate the characteristics of the product. Approximately 90 percent of CIBA's refund claim derives from distribution of free contact lenses.

CIBA purchased prescription ophthalmic drugs from third-party manufacturers located outside Georgia. All drugs that CIBA intended to use as samples were purchased as finished products that had already been packaged and labeled or otherwise designated as samples not intended for resale. In some cases, CIBA mailed samples to requesting eye-care professionals. In most cases, CIBA sent the samples to sales representatives who called on those professionals. The representatives might show the product and explain its benefits, but typically would not open the sample to demonstrate its use. Approximately ten percent of CIBA's refund claim relates to distribution of these drug samples.

In reviewing the Department of Revenue's administrative decision,

> the superior court determines whether there was any evidence to support the agency's decision. Upon our review of the superior court's actions, the evidence is construed in favor of the agency's decision. Both the superior court and this Court review conclusions of law de novo. OCGA § 50-13-19 (h).

(Citations omitted.) *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga.

---

[1] We granted CIBA's application for a discretionary appeal to review this decision.

App. 141 (542 SE2d 538) (2000).

1. Relying on *Collins v. Prince Street Technologies*, 220 Ga. App. 492 (469 SE2d 700) (1996), the trial court held that giving free samples of contact lenses constituted a "deemed retail sale" under OCGA § 48-8-39 because giving away free samples was a use of such items "other than retaining, demonstrating or displaying [them] for sale," and thus, subject to the Georgia Retail Sales and Use Tax. CIBA would like to overrule *Prince Street*. It further argues that because its use of the items was unquestionably for purposes of demonstrating or displaying its products, giving away free samples should not have been deemed a retail sale.

Under the Georgia Retail Sales and Use Tax, although the ultimate consumer is the party liable for sales tax (OCGA § 48-8-30 (b) (1)), the seller must collect the tax and submit it to the State. OCGA § 48-8-39 (a) and (b) govern the situation where the dealer never sells the goods but instead puts them to his own use. That Code section provides that for retailers (subsection (a)) and for manufacturers (subsection (b)), if the dealer *"makes any use* of the article of tangible personal property *other than retaining, demonstrating, or displaying it for sale*, the use shall be deemed a retail sale as of the time the article is first used by him. . . ."* (Emphasis supplied.) OCGA § 48-8-39 (b). The intent of this statute " 'is to capture tax revenues by creating a fictional "sale" where the manufacturer of an item elects to use it himself rather than sell it in the normal course of his retail business.' [Cit.]" *Prince Street*, 220 Ga. App. at 493. We note, however, that, as made clear in that Code section, a deemed retail sale is nothing more than a "use" of the product which is also a taxable event. OCGA § 48-8-30 (a). And "use" is defined as "the exercise of any right or power over tangible personal property incident to the ownership of the property. . . ." OCGA § 48-8-2 (12).

*Prince Street* is directly on point for most of the "free sample" contact lenses at issue in this case, and we find no grounds to overrule it. In *Prince Street*, a carpet manufacturer gave away free samples as a part of its marketing strategy. This Court held that Prince Street's use of some of the carpet as free samples did not constitute "retaining, demonstrating, or displaying it for sale." *Prince Street*, 220 Ga. App. at 493. *Prince Street* stands for the proposition that giving away free samples is different from demonstrating your product without giving it away.[2] Each of the three exempt uses implies that

---

[2] Similarly, a 1962 opinion of the Attorney General advised that a manufacturer that purchased advertising materials out of state and shipped them directly to its retailers, at no cost, for use in promoting sales, was liable for use tax on the advertising materials. 1962 Op. Atty. Gen., p. 556.

the dealer still owns the item. It follows that where ownership of the item has changed, e.g., where the item has been given away, it cannot be said the dealer is "retaining, demonstrating, or displaying it for sale."

Here, most of the free contact lenses were given to the eye-care professionals for their use any way they saw fit. The use of the free samples is simply a marketing scheme designed to promote the sale of CIBA lenses. Thus, under the authority of *Prince Street*, those samples were properly classified as deemed retail sales.

But, there were instances where CIBA's sales representatives did, in fact, open the packaged lenses and demonstrate their use and characteristics. These samples fall within the exception set forth in OCGA § 48-8-39 and are not taxable. There remains an issue of fact, therefore, as to how many contact lenses fall into this category.

The drugs that CIBA purchased out of state for delivery in state are also taxable because CIBA did not purchase the drugs for resale and therefore it owed the use tax upon purchasing the drugs. See OCGA §§ 48-8-30 (c.1) (1); 48-8-2 (6) (A) (retail sale means a sale for any purpose other than for resale). It is undisputed that CIBA packaged, labeled, or otherwise designated the drug samples as "samples" not intended for resale. See also *Craig-Tourial Leather Co. v. Reynolds*, 87 Ga. App. 360, 364 (2) (73 SE2d 749) (1952) (the transaction is taxable if it is the "last of a possible series of sales"). As explained by the trial court, even if this were not so, the rule in *Prince Street* would apply, and the act of giving away free samples would constitute a deemed retail sale under OCGA § 48-8-39.

2. CIBA next argues that OCGA § 48-8-3 (47), sales and use tax exemption 47, applies to the transactions at issue. That exemption provides that the sales tax shall not apply to "[s]ales of drugs dispensed by prescription and prescription eyeglasses and contact lenses." OCGA § 48-8-3 (47). CIBA argues that in the exemption, the term "contact lenses" is not modified by the terms "prescription" or "dispensed by prescription." Accordingly, it argues, the exemption applies to all sales of contact lenses (including deemed retail sales), not just sales to the ultimate consumer holding a valid prescription. Therefore, CIBA concludes, the sample contact lenses that it gave to eye-care professionals were not taxable.

The trial court disagreed and found that exemption 47 did not apply because it applied only to the sale of contact lenses pursuant to a valid prescription. In so doing, the court upheld the Tax Commissioner's application of Department of Revenue Regulation 560-12-2-.30 (5), which provides:

> The tax does not apply to retail sales of drugs dispensed by prescription. . . . As used herein, the phrase "dispensed by

prescription" means drugs which are actually purchased at retail pursuant to a valid prescription which has been issued to the consumer by a person authorized by law to issue the prescription.

See also Regulation 560-12-2-.67 ("The sale by prescription of the glasses and lenses would be exempt under law," and "eye glasses and lenses sold by prescription are exempt"). The court also reasoned that the interpretation was consistent with the policy of reducing an individual's burden for medical necessities.

"It is well settled that an exemption or a claim of exemption must be construed strictly against the taxpayer and in favor of the taxing authority." *Blackmon v. Cobb County-Marietta Water Auth.*, 126 Ga. App. 459, 461 (1) (191 SE2d 128) (1972). See also *Lowry v. McDuffie*, 269 Ga. 202, 204 (2) (496 SE2d 727) (1998) (exemptions should be strictly construed in favor of the general public, and no exemption shall apply by implication). Further, we are required to give great weight and deference to the Department of Revenue's interpretation. *Kelly v. Lloyd's of London*, 255 Ga. 291, 293 (336 SE2d 772) (1985); *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993).

We first note that the taxable event at issue in this case is the transfer of free items from CIBA to the eye-care professionals. Although the gift of a free sample is deemed a retail sale, in reality, it is nothing more than a use of the product by CIBA. There was no consideration and no real sale. As stated above, "use" is defined as "the exercise of any right or power over tangible personal property incident to the ownership of the property. . . ." OCGA § 48-8-2 (12). On its face, the exemption applies only to sales, and the transaction at issue here was a use of the product, not a sale. OCGA § 48-8-3 (47).

Second, CIBA's argument that the statute exempts transactions involving contact lenses regardless of whether the goods were sold pursuant to a prescription has no merit. Standing alone, exemption 47 is ambiguous in this regard. The phrase "drugs dispensed by prescription" appears to reflect the Tax Commissioner's interpretation — it suggests that sales of prescription drugs are exempt only if they are sold in a transaction pursuant to a prescription. The remainder of the exemption gives some support to CIBA's interpretation — it suggests that prescription glasses and contact lenses are exempt regardless of the nature of the transaction in which they are sold.

But, construing the exemption strictly against the taxpayer, we hold that the exemption applies only to transactions involving a sale pursuant to a prescription. This construction is consistent with the interpretation of the exemption by the Tax Commissioner, who has the duty of enforcing it. For these reasons we conclude that the trial

court correctly refused to apply exemption 47 to CIBA's practice of giving away free samples of contact lenses and ophthalmic drugs.

CIBA argues that the interpretation of exemption 47 found in Regulation 560-12-2-.30 (5) is not supported by the wording of the statute. It is true that an administrative rule or regulation may be held invalid if it is not authorized by statute or is unreasonable. *Ga. Real Estate Comm. v. Accelerated Courses in Real Estate*, 234 Ga. 30, 32 (2) (214 SE2d 495) (1975). But, given our construction of the exemption upon which the regulation is based, we find that the regulation applicable here is authorized and reasonable.

CIBA claims that our construction of the exemption creates anomalous results. That is, prescription lenses and drugs are taxable if they are given away but not taxable if they are sold, or, in other words, deemed retail sales are taxable but real sales are not. But, the true state of affairs is that prescription lenses and drugs are not taxable when they are sold; they are taxable when they are used as a part of a marketing strategy of promoting sales. There is no anomaly.

CIBA also claims that the failure to apply the exemption to CIBA is a violation of equal protection under the Fourteenth Amendment and under the Georgia Constitution because the tax is assessed against only one taxpayer. However, CIBA has not shown how the statute or the regulations would tax any similarly situated entity differently.

*Judgment affirmed in part and reversed in part. Miller and Mikell, JJ., concur.*

DECIDED MARCH 21, 2001 —

*Smith, Gambrell & Russell, Edward K. Smith, Paul G. Williams,* for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General,* for appellee.