A02A1816. FIRST NATIONAL BANK OF POLK COUNTY v. CARR
et al.
(579 SE2d 863)

MIKELL, Judge.

Edward and Esther Carr owned four contiguous lots in Fannin County, Georgia, which were known as Lots 1, 2, 3, and 4. On November 1, 1990, the Carrs executed a security deed in favor of First National Bank of Polk County (the "Bank") in the amount of $75,000, pledging Lots 1 and 4 as collateral. Appellee A. C. Ramsey obtained a judgment in the amount of $76,000, plus interest of one percent per month, against Edward Carr in the State Court of Cobb County on December 13, 1990. Ramsey filed a writ of fieri facias against the Carrs, causing Sheriff Walter A. Porter to levy Lots 2 and

3 of the Carrs' property.[1] After proper advertisement for sale, Lots 2 and 3 were sold to Ramsey on September 3, 1991, for $10,000. As a part of the sale, Ramsey obtained the Carrs' house, which was on Lot 3. The Bank assumed that the house was a part of the collateral the Carrs pledged in the security deed.

The Bank filed an action against the Carrs, Ramsey, and Sheriff Porter, seeking reformation of the security deed and cancellation of the levy and sale of Lots 2 and 3 to Ramsey. The jury, sitting in an advisory capacity, answered special interrogatories.[2] The trial judge adopted the jury's findings and entered judgment for Ramsey on October 31, 2000. On January 30, 2002, the trial court entered an order revising its earlier judgment to include findings of fact and conclusions of law.[3] On appeal, the Bank challenges the findings of fact and conclusions of law. "Factual findings and credibility determinations by the trial court will be upheld on appeal if there appears in the record any evidence to support them,"[4] and conclusions of law are reviewed de novo.[5]

1. In its first enumerated error, the Bank argues that the trial court erred by failing to include in its findings of fact that there was a mutual mistake of fact regarding the description of the property used as collateral for the loan. We disagree.

"In order for equity to reform a written instrument on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties."[6] "A 'mutual mistake' in an action for reformation means one in which both parties had agreed on the terms of the contract, but by mistake of the scrivener the true terms of the agreement were not set forth."[7] That is not the case here.

The Carrs purchased Lots 1 and 4 in 1984 and Lots 2 and 3 in 1985. Edward Carr testified that he knew that the septic tank for the house was on Lot 4 and that he thought that the house was on both

---

[1] Sheriff Porter, who levied the Carrs' land, was also named as a defendant in the underlying action. He is not a party to this appeal.

[2] In its responses to the special interrogatories, the jury found that a mutual mistake occurred in the description of the property conveyed as collateral, that the Carrs defrauded the Bank by giving an incorrect or incomplete legal description, that the Bank did not exercise reasonable diligence in its efforts to obtain its collateral, and that Ramsey was a bona fide purchaser for value.

[3] The judgment initially entered by the trial court incorporated the jury verdict form, which contained several special interrogatories. The Bank appealed that judgment and the trial court's order denying its motion for directed verdict, judgment notwithstanding the verdict, and new trial to the Supreme Court. The Supreme Court transferred the case to this Court. We dismissed the appeal as premature since no action had been taken under OCGA § 9-11-54 (b).

[4] (Citation omitted.) *Dudley v. Snead*, 250 Ga. 804-805 (1) (301 SE2d 480) (1983).

[5] *CIBA Vision Corp. v. Jackson*, 248 Ga. App. 688, 689 (548 SE2d 431) (2001).

[6] (Citation omitted.) *Layfield v. Sanford*, 247 Ga. 92, 93 (274 SE2d 450) (1981).

[7] *Cox v. Smith*, 244 Ga. 280, 282-283 (1) (260 SE2d 310) (1979).

Lots 3 and 4. Yet the Carrs pledged Lots 1 and 4 as collateral in the deed to secure debt. This evidence alone supports the trial court's conclusion that there was no mutual mistake of fact, as the Carrs knew that the house was not on Lots 1 and 4 even if the Bank did not. Accordingly, this enumeration of error is without merit.

2. Next, the Bank contends that the trial court erred in finding that it failed to exercise due diligence. Again, we disagree.

> Where a party seeks to be relieved in equity, from the effect of a mistake, he must show due diligence on his part. Courts of equity grant relief only in favor of the diligent. While equity will, on seasonable application and under proper circumstances, relieve a party from the injurious consequences of an act done under a mistake of fact, it will not do so if such party could by reasonable diligence have ascertained the truth as to the matter concerning which the mistake was made.[8]

In *Crawford v. Williams*,[9] the purchasers bought property, which they thought included a house, a well, and a driveway. Two years later, they learned that the well and driveway were not on their land and sued the seller for fraud. The original plat showed that the well and driveway were not on the property, but the purchasers had never looked at the plat, even after the real estate agent referred them to it.[10] Our Supreme Court held that "[t]he law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity."[11]

In this case, the deed to secure debt incorporated by reference a recorded plat which showed that Lots 1 and 4 were on opposite sides of a gravel road. William Stuart, the loan officer responsible for the Carrs' loan, testified that the plat was in the Bank's file. The Bank simply did not bother to review its own file, which certainly would have put it on notice to investigate its collateral position. Since the Bank neglected to use ordinary means of information to protect itself, it is not entitled to relief under *Crawford*. Accordingly, the trial court's finding that "[the Bank] failed to exercise ordinary diligence

---

[8] (Citations and punctuation omitted.) *City of Jefferson v. Trustees of Martin Institute*, 199 Ga. 71, 77-78 (1) (33 SE2d 354) (1945). Accord *Layfield*, supra (no equitable relief permitted where party seeking reformation did not read the deed). See generally *Langston v. Langston*, 147 Ga. 318, 320 (93 SE 892) (1917) (reformation not warranted where one party made a mistake).

[9] 258 Ga. 806 (375 SE2d 223) (1989).

[10] Id. at 807.

[11] Id. at 808, citing *Miller v. Clabby*, 178 Ga. App. 821, 823 (344 SE2d 751) (1986).

to protect itself and to prevent itself from obtaining the wrong two lots as collateral" was not erroneous.

3. In its third enumerated error, the Bank argues that the court utilized the wrong standard to determine whether it was entitled to equitable relief, and that the correct standard demands a finding that the mutual mistake is recoverable in equity. This argument presumes that there was a mutual mistake of fact. In light of our conclusion in Division 1 that the evidence shows that no mutual mistake of fact occurred, this enumeration fails.

4. Next, the Bank argues that the trial court erred by failing to determine whether Ramsey was a bona fide purchaser for value. The record does not support this argument.

The jury concluded that Ramsey was a bona fide purchaser for value in its answers to special interrogatories posed by the parties. The trial court's judgment incorporated these responses. Further, the trial court concluded in its findings of fact that "at the time Defendant Ramsey initiated the sheriff's sale for Lots 2 and 3 he was unaware the house was actually located on Lot 3." Thus, the court found that Ramsey was a bona fide purchaser for value.[12] The Bank argues that Ramsey could not have been a bona fide purchaser because he knew that the Bank thought that the house was included in its collateral at the time of the sale.

"The question as to whether the defendant in error had actual notice, or as to whether the circumstances were sufficient to put him on notice of the state of the title, were questions to be determined by the jury."[13] Ramsey testified that he performed a title search on the property owned by the Carrs; that he found the Bank's security deed covering Lots 1 and 4; and that he asked the sheriff to foreclose on the Carrs' unencumbered property, Lots 2 and 3. The fact that Ramsey admitted that he learned that the house was on Lot 3 thirty minutes before he bought it does not alter the fact that Lots 2 and 3 were unencumbered when Ramsey purchased them.

> [O]ne claiming title to lands is chargeable with notice of every matter *which appears in his deed, and of any matters which appear on the face of any deed, decree, or other instrument forming an essential link in the chain of instruments through which he deraigns title,* and of whatever matters he

---

[12] We note that the Bank does not specifically enumerate as error the trial court's conclusion that Ramsey was a bona fide purchaser for value but argues that he was not in its brief.

[13] *Dollar v. Dollar*, 214 Ga. 499, 503 (1) (105 SE2d 736) (1958), citing *Robinson & Johnson v. Rothchilds & Co.*, 10 Ga. App. 237, 239 (73 SE 554) (1912); *Dyal v. McLean*, 188 Ga. 229, 232 (3 SE2d 571) (1939).

would have learned by any inquiry which the recitals of those instruments made it his duty to pursue.[14]

Accordingly, this enumeration fails.

5. Lastly, the Bank challenges the trial court's finding of fact that Ramsey would be prejudiced by reformation. Pursuant to OCGA § 23-2-32 (b), "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." Ramsey took possession of the property on September 3, 1991, and began making repairs and improving the property. Ramsey submitted a list of expenses he has incurred since then and testified that as of December 24, 1999, he had spent $12,410 and that he continued to incur expenses. Thus, the trial court's finding that Ramsey would be prejudiced by the reformation sought by the Bank is not clearly erroneous.[15]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MARCH 20, 2003 —

*Gambrell & Stolz, Seaton D. Purdom, Robert G. Brazier, Gregory G. Schultz*, for appellant.

*Moore, Ingram, Johnson & Steele, Eldon L. Basham, Susan S. Stuart*, for appellees.

---

[14] (Citations omitted; emphasis supplied.) *Henson v. Bridges*, 218 Ga. 6, 9 (2) (126 SE2d 226) (1962).

[15] Compare *Sheldon v. Hargrose*, 213 Ga. 672, 675 (1) (100 SE2d 898) (1957) (reformation allowed where defendant was not prejudiced because he had not possessed the land or acquired a right or interest in it).